United States District Court
Southern District of Texas
FILED

OCT 0 9 2019

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNTED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. **M-19-1995** |
| RICARDO QUINTANILLA,<br>aka "Richard"<br>SUNIL WADHWANI | § § § § | |

### INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNT ONE
### 18 U.S.C. § 1349
### (Conspiracy to Commit Honest Services Wire Fraud)

At all times relevant to this Indictment, with dates, times and amounts being approximates:

#### Relevant Individuals and Entities

1. Defendant **RICARDO QUINTANILLA** also known as "Richard" **("QUINTANILLA")** was a businessman who lived and worked in Weslaco, Texas.

2. Defendant **SUNIL WADHWANI ("WADHWANI")**, was a businessman who lived and worked in McAllen, Texas.

3. Person A is a business associate of Defendant **WADHWANI.**

4. Person B is a resident of the Rio Grande Valley located in the state of Texas.

5. Commissioner A was a Commissioner of the Weslaco City Commission and Economic Development Corporation of Weslaco board member during all times relevant to this Indictment.

#### GENERAL ALLEGATIONS

#### The Economic Development Corporation of Weslaco

6. The Economic Development Corporation of Weslaco ("The Corporation") is a non-profit corporation specifically governed by the Texas Development Corporation Act, as amended. Texas

1

Local Government Code, Chapter 501, *et seq.*, thereinafter referred to as "the Development Corporation Act." The purpose of the Corporation is to promote, assist, and enhance economic and industrial development in accordance with the Articles of Incorporation. The Corporation shall have no members.

7. The business and affairs of the Corporation and all corporate powers shall be exercised by or under authority of the Board of Directors (the "Board"), appointed by the governing body of the City of Weslaco in the manner provided in Article VI of the Articles of Incorporation, as from time to time amended, and subject to applicable limitations imposed by the Development Corporation Act, the Texas Non-Profit Corporation Act, the Texas Business Corporation Act, the Articles of Incorporation, or these Bylaws, as each are from time to time amended. The Board may, by contract, resolution, or otherwise, give general or limited or special power and authority to the officers and employees of the Corporation to transact the general business or any special business of the Corporation, and may give powers of attorneys to agents of the Corporation to transact any special business requiring such authorization.

8. The Board may plan and direct its work through the Executive Director of the Corporation, who will be charged with the responsibility of carrying out the programs as adopted and planned by the Board.

9. For the purpose of convening a meeting, and transacting business, a quorum shall consist of four Directors. In addition to such quorum requirement, any action taken by the Board shall require the affirmative vote of the four Directors.

10. Directors must be present in order to vote at any meeting. In the event that a Director is aware of a conflict of interest or potential conflict of interest with regard to any particular vote, the Director shall bring the same to the attention of the meeting and shall abstain from the vote.

Determination of a conflict of interest shall be made in accordance with Chapter 171, Texas Local Government Code.

11. The elected officers of the Corporation shall be a President, Vice-President, Secretary, and Treasurer. Such officers shall have the authority and perform the duties of the offices as the Board may from time to time prescribed. Any two or more offices may be held by the same person, except the office of the President and Secretary. All elected officers shall be members of the Board of Directors.

12. The President and Secretary shall execute any contracts or other instruments which the Board has approved and authorized to be executed, provided, however, that the Board may by appropriate resolution, authorize any other officer or officers or any other agent or agents, including the Executive Director of the Corporation, to enter into contracts or execute and deliver any instrument in the name and on behalf of the Corporation. Notwithstanding anything to the contrary herein contained, the Corporation shall not make any commitment to disburse or for disbursal of any funds for any one project in excess of (a) 10% of the total gross annual revenues of the Corporation or (b) $100,000.00, whichever is greater, without prior approval of the City Commission.

13. In February of 2013, four members of the Corporation were removed and replaced by Weslaco City Commissioners, including Commissioner A.

### The Weslaco City Commission

14. The Texas Constitution, the laws of the State of Texas, and the charter of the City of Weslaco established ethical standards of conduct for elected public officials, including Weslaco City Commissioners. These standards included an oath to faithfully execute the duties of the office of commissioner and to preserve, protect, and defend the Constitution and the laws of the United

States and the State of Texas. Accordingly, commissioners owed a fiduciary duty to the City of Weslaco, the commission, and the people of the City of Weslaco.

15. As officials in the city government, Weslaco City Commissioners, including Commissioner A, owed a fiduciary duty to the City of Weslaco and to its citizens to perform the duties and responsibilities of their office free from corrupt influence. As elected officials in the State of Texas, Weslaco City Commissioners swore to uphold the United States Constitution, the Texas Constitution, and the laws of the State of Texas and to faithfully execute the duties of their office.

16. The Weslaco City Commission is authorized to take official action only when a quorum—a majority of duly elected commissioners is present. When a quorum was present, the commission could act based on a majority vote.

17. Pursuant to the Texas Open Meetings Act, Tex. Gov't Code Ann. § 551, *et seq.*, the commission, as a city government in Texas, was authorized to conduct official business only after providing at least 72 hours of public notice of the time, place, and subject matter of the meeting. Such meetings were generally required to be open to the public, with closed meetings and executive sessions permitted only under narrowly drawn exceptions.

### The Motel 6 Project in Weslaco, Texas

18. During 2013, the Corporation entered into a development agreement providing $300,000 of incentives to Nolana Self Storage, LLC doing business as Motel 6 ("NSS"), a company owned by **WADHWANI,** to construct a Motel 6 in Weslaco, Texas. The finalized terms of the development agreement provided that payment would be provided by the Corporation as follows: $150,000 upon pouring the concrete foundation; $150,000 upon the Corporation's receipt of a copy of the Certificate of Occupancy, but no earlier than October 14, 2014.

19. Because the development agreement referenced in paragraph 18 exceeded $100,000 it required and received the approval of the Weslaco City Commission.

## THE CONSPIRACY

20. From at least April 2013 through in or about November 2014, in the Southern District Texas and elsewhere, the defendants,

**RICARDO QUINTANILLA,**

**SUNIL WADHWANI,**

Person A, Person B, and Commissioner A, did knowingly combine, conspire, confederate, and agree with one another, and with others known and unknown to the Grand Jury, to devise and intend to devise a scheme and artifice to defraud and to deprive, by means of material false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted by means of wire communication in interstate commerce, any writings, signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice to defraud and deprive, that is, to deprive the City of Weslaco, the Weslaco City Commission, the Corporation, and the citizens of Weslaco of their right to the honest services of Commissioner A through bribery, in violation of 18 U.S.C. §§ 1343 and 1346.

## THE SCHEME TO DEFRAUD

21. From in or about April 2013 through in or about November 2014, in the Southern District Texas and elsewhere, the defendants, **SUNIL WADHWANI, RICARDO QUINTANILLA,** Person A, Person B, and Commissioner A, and others known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud and to deprive the City of Weslaco, the Weslaco City Commission, the Corporation, and the citizens of Weslaco of their intangible right to the honest services of Commissioner A, an elected official, through bribery.

## PURPOSE OF THE CONSPIRACY

22. The purposes of the conspiracy included, but were not limited to, the following:

23. **WADHWANI** to enrich himself by receiving incentive payments to construct and develop a Motel 6 in Weslaco, Texas in exchange for the payment of bribes;

24. **QUINTANILLA** to enrich himself by keeping a portion of the bribe funds paid to him by **WADHWANI**, and then pay the remainder of the bribe funds to Person B and Commissioner A.

25. For Commissioner A to enrich himself/herself by accepting bribes in exchange for using his official position as a Weslaco City Commissioner and Corporation board member to take official acts to benefit and help **WADHWANI's** business receive incentive payments.

26. For Person B enrich himself/herself by keeping a portion of the bribe funds paid to him by **WADHWANI** through **QUINTANILLA**.

## MANNER AND MEANS OF THE CONSPIRACY

27. The manner and means by which the defendants carried out the conspiracy included, but were not limited to, the following:

28. **WADHWANI, QUINTANILLA,** Person A, Person B, and/or Commissioner A met at locations in the Southern District of Texas and elsewhere, to discuss the official action that would be taken to benefit **WADHWANI** and his business entities.

29. **WADWHANI** paid thousands of dollars to **QUINTANILLA,** who would then funnel bribe payments to Person B and Commissioner A in efforts to conceal the nature and source of the bribes.

30. In order to conceal the scheme and bribe payments to Commissioner A, **WADHWANI, QUINTANILLA,** Person A, and Person B circulated and drafted a fictitious consulting services agreement between a business entity owned by **WADHWANI** and a business entity owned by Person B.

31. Commissioner A cast votes to approve and modify a development agreement, which included incentive payments to a business entity owned by **WADHWANI** in exchange for bribe payments.

32. **WADHWANI, QUINTANILLA**, Person A, Person B, and Commissioner A, and their co-conspirators used wire communications in interstate commerce, such as mobile messaging applications, e-mails, and interstate bank transfers in furtherance of their scheme to defraud.

## OVERT ACTS

33. In furtherance of the conspiracy and in order to accomplish its objects, **WADHWANI, QUINTANILLA**, Person A, Person B, Commissioner A, and their co-conspirators committed the following overt acts, among others, in the Southern District of Texas and elsewhere:

34. By at least 2013, Defendants, **WADHWANI, QUINTANILLA,** Person A, Person B, Commissioner A, and others devised a scheme to funnel bribe payments in exchange for awarding a development agreement with favorable terms to construct and develop a Motel 6 in Weslaco, Texas.

35. On April 25, 2013, Person A emailed **QUINTANILLA**, utilizing email address ric9365@gmail.com, requesting **QUINTANILLA** review a letter that would be sent to the Corporation advising them of **WADHWANI's** intent to build and operate a Motel 6 in Weslaco, Texas.

36. On or about April 25 2013, **WADHWANI** submitted an Incentive Application to the Corporation proposing a Motel 6 be built in Weslaco, Texas. The Executive Director of the Corporation's preliminary recommendation was to provide a $300,000 incentive reimbursement based on a documented total project expenditure of $3,000,000 to include soft and hard cost for the development plus land cost.

37. In May of 2013, **WADHWANI** received a Letter of Commitment from Inter National Bank requiring $150,000 in funding from the Corporation prior to receiving $2,830,500 in funds from Inter National Bank to construct a Motel 6 in Weslaco, Texas. In order to obtain the funds and construct the Motel 6, **Defendants** took the following actions described in the following paragraphs.

38. On or about May 1, 2013, **WADHWANI** obtained a Letter of Commitment advising **WADHWANI** that Inter National Bank had approved a $2,830,500 loan for the purpose of construction and permanent financing for the proposed Motel 6 in Weslaco, Texas. One condition of the loan was that **WADHWANI** would provide proof that $150,000 in funding from the Corporation be in place prior to receiving any funds from Inter National Bank.

39. On May 2, 2013, Person A emailed the Executive Director of the Corporation a Letter of Intent advising the Corporation of **WADHWANI's** intent to build and operate a Motel 6 in Weslaco, Texas. This is was the same letter Person A sent to **QUINTANILLA** on April 25, 2013.

40. On May 8, 2013, at a Special Meeting for the Corporation, **WADHWANI**, Person A, and others, representing themselves as the company Sarina Group, Ltd. ("Sarina Group"), made a presentation regarding the Motel 6 project to the Corporation. An incentive of up to $300,000 to Sarina Group for the Motel 6 project was unanimously approved, including a vote from Commissioner A.

41. On May 9, 2013, Person A emailed the Executive Director of the Corporation requesting any news regarding Sarina Group's request. The Executive Director of the Corporation advised the Corporation authorized an incentive of up to $300,000 based on an investment of $3,000,000 including soft and hard costs of the project plus the land. In addition, the next step would be for the Weslaco City Commission to approve the incentive payment.

42. On May 15, 2013, **WADHWANI** received a letter, via email, notifying Sarina Group of the Corporation's authorization of an incentive up to $300,000. The $300,000 incentive payable would be made as follows: $50,000 upon Certificate of Occupancy; five yearly payments of $50,000 on the anniversary date of Certificate of Occupancy.

43. On May 15, 2013, Person A emailed the Executive Director of the Corporation requesting half the funds be available at the beginning of the project due to stipulations associated with the bank loan. In addition, Person A requested the Corporation release the remaining $150,000 by the end of the year. On May 23, 2013, Person A emailed the Executive Director of the Corporation a letter on behalf of **WADHWANI** formally requesting the incentive be front loaded and that 50% of the funds be available when the project breaks ground.

44. On May 29, 2013, **WADHWANI** received a copy of a letter, via e-mail, detailing a revision of the incentive payments. The letter detailed that based upon Sarina Group's request to provide more funding at the inception of the project and based on the Corporation's requirement that funding be performance based, the Executive Director of the Corporation proposed the following: $25,000 upon approval of the underground plumbing inspection; $25,000 upon approval of the foundation inspection; $25,000 upon approval of the rough-in inspection; $25,000 upon approval of the ceiling inspection; $25,000 upon approval of the fire cover-up inspection; $25,000 upon approval of the final inspection; $75,000 upon receipt of the Certificate of Occupancy and open for business; $75,000 upon the first anniversary of business opening. The Executive Director of the Corporation advised the Motel 6 project would be presented to the Weslaco City Commission at the meeting scheduled on June 4, 2013 and the incentive offer is subject to approval by the Weslaco City Commission and final negotiation of the terms of the development agreement.

45. On June 4, 2013, at a Regular Meeting of the Weslaco City Commission, the Weslaco City Commission authorized a development agreement between the Corporation and Sarina Group that provided an incentive over $100,000. The motion carried unanimously, including a vote from Commissioner A.

46. On June 28, 2013, during a Special Meeting of the Corporation, the Executive Director of the Corporation resigned and was replaced with an Interim Executive Director of the Corporation. Commissioner A approved the resignation and replacement of the Interim Executive Director of the Corporation.

47. On or about July 30, 2013, **WADHWANI** received a letter detailing a revision of the incentive payments. The letter detailed that based upon Sarina Group's request to provide more funding at the inception of the project and based on the Corporation's requirement that funding be performance based, the Interim Executive Director of the Corporation proposed the following: $75,000 upon completion of the foundation; $75,000 upon completion of the third floor framing; $75,000 upon receipt of a copy of the Certificate of Occupancy; $75,000 on the first anniversary of the receipt of the Certificate of Occupancy.

48. On August 21, 2013, during a Regular Meeting of the Corporation, the Corporation authorized a revision of the method of earning the incentive by Sarina Group and authorize the Interim Executive Director of the Corporation to present the revised method of earning the incentive, and to prepare and execute the development agreement. Commissioner A voted for and supported the revision.

49. On August 23, 2013, **SUNIL WADHWANI** was provided a letter, via email, detailing a revision of the incentive payments. The letter detailed that at the Corporation's meeting held on August 21, 2013, the Corporation authorized a revision of the incentive payout as follows:

$150,000 upon pouring the concrete foundation; $150,000 upon the Corporation's receipt of a copy of the Certificate of Occupancy.

50. On September 30, 2013, during a Special Meeting of the Corporation, the Interim Executive Director of the Corporation was removed and replaced with another Interim Executive Director of the Corporation. Commissioner A supported and voted for the removal of the Interim Executive Director of the Corporation.

51. On September 30, 2013, during a Special Meeting of the Corporation, the Corporation again authorized a modification to the development agreement to authorize Interim Executive Director of the Corporation to present the modification to the development agreement and to prepare and to execute the modification to the development agreement. The motion carried unanimously, including a vote of approval from Commissioner A for the authorization of the modification.

52. On October 4, 2013, **WADHWANI** was provided a letter, via email, detailing a revision of the incentive payments. The letter detailed that at the Corporation's meeting held on September 30, 2013, the Corporation authorized a revision of the incentive payout as follows: $150,000 upon pouring the concrete foundation; $150,000 upon the Corporation's receipt of a copy of the Certificate of Occupancy, but no earlier than October 14, 2014.

53. On December 2, 2013, **WADHWANI** signed the development agreement with the Corporation for the Motel 6 project. However, the development agreement was between the Corporation and NSS.

54. On December 23, 2013, Person A provided the Interim Executive Director of the Corporation supporting documents as evidence of the completion of NSS's obligation and requested the release of the first payment of $150,000.

55. On or about December 31, 2013, the Corporation wrote a check in the amount of $150,000, to NSS. On or about January 3, 2014, said check was deposited into a bank account for which **WADHWANI** is an authorized signer.

56. On or about November 1, 2014, the Corporation wrote a check from a BBVA Compass Bank Account in the amount of $150,000, to NSS. On or about November 3, 2014, said check was deposited into an Inter National Bank Account. **WADHWANI** is an authorized signer for this account.

57. On December 27, 2013, after the development agreement between the Corporation and NSS had been signed, Person A sent **QUINTANILLA** a purported consulting services agreement between NSS and Person B. The consulting services agreement contained hand written notes, edits, and requested revisions.

### Bribe Payments

58. In order to obtain the development agreement containing over $300,000 in incentive agreements from the Corporation and City of Weslaco, **WADHWANI** paid thousands of dollars in bribe payments to **QUINTANILLA**, who in turn provided portions of the bribe payments to Person B and Commissioner A.

59. In return for the receipt of the bribe payments, Commissioner A agreed to vote favorably for the development agreement and its revisions as a board member for the Corporation and as a Weslaco City Commissioner.

## COUNT TWO
## 18 U.S.C. §§ 1343, 1346
### (Honest Services Wire Fraud)

60. Paragraphs 1-59 are incorporated by reference as though fully set forth herein.

61. From in or about April 2013 and continuing through in or about November 2014, in the Southern District of Texas and elsewhere, the defendants,

**RICARDO QUINTANILLA,**

**SUNIL WADHWANI,**

Person A, Person B, and Commissioner A, and others known and unknown to the grand jury, devised and intended to devise a scheme and artifice to defraud the City of Weslaco, the Weslaco City Commission, the Corporation, and the citizens of Weslaco of their intangible right to the honest services of Commissioner A through bribery; to wit, on or about the dates set forth below, in the Southern District of Texas and elsewhere, the defendants, for the purpose of executing and attempting to execute the scheme and artifice to defraud and deprive, transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce the following writings, signs, signals, pictures and sounds: a bank wire transmission of $150,000.00 in funds from a BBVA Compass bank account to an Inter National Bank bank account on or about November 3, 2014.

All in violation of Title 18 United States Code, Sections 1343, 1346, and 2.

## NOTICE OF CRIMINAL FORFEITURE
### 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)

Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), the United States gives notice to the defendants,

**RICARDO QUINTANILLA**

and

**SUNIL WADHWANI**

that upon conviction of an offense in violation of Title 18, United States Code, Sections 1343, and 1349, as charged in Counts 1 through 2 of this Indictment, all property, real or personal, which constitutes or is derived from proceeds traceable to such offense, is subject to forfeiture.

Property Subject to Forfeiture

The property subject to forfeiture is approximately $300,000.00. In the event that a condition listed in Title 21, United States Code, Section 853 exists, the United States will seek to forfeit any other property of the defendant in substitution up to the total value of the property subject to forfeiture. The United States may seek the imposition of a money judgment.

A TRUE BILL

FOREPERSON

RYAN K. PATRICK
UNITED STATES ATTORNEY

ASSISTANT UNITED STATES ATTORNEY

14