UNITED STATES DISTRICT COURT THE
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. M-19-1995 |
| | § | |
| RICARDO QUINTANILLA, | § | |
| aka "Richard" and | § | |
| | § | |
| SUNIL WADHWANI | § | |

**DEFENDANT SUNIL WADHWANI'S MOTION FOR SEVERENCE**

Pursuant to Rule 14 of the Federal Rules of Criminal Procedure, Defendant Sunil

Wadhwani moves to sever his trial from that of his co-defendant, Ricardo Quintanilla.

**FACTS**

**1.  Wadhwani's Background**

Sunil Wadhwani is a local businessman and U.S. citizen who has lived and worked in the

Rio Grande Valley for nearly 40 years.  In the last 15 years, Wadhwani has built seven hotels in

the Valley.  In 2018, the hotels generated a total of approximately $8.5 million in gross sales.  His

hotels and other businesses employ more than 120 people and work with more than 100 vendors.

In addition to providing a livelihood and financial security to hundreds of individuals, Wadhwani

is a member of several local boards and actively contributes to the McAllen community, including

significant support for the Yaqui Animal Rescue.

In early 2013, Wadhwani secured just under $3 million in bank financing to build the

Motel 6 project in Weslaco, Texas.  In late 2012 or early 2013, the EDC agreed in principal to

give Wadhwani's company $300,000 to make improvements to public infrastructure.

The government claims that Wadhwani indirectly bribed a Weslaco Commissioner

("Commissioner A") *after* the EDC finalized the agreement for $300,000. The government's

theory begs the question: Why would Wadhwani bribe someone with a small amount of money when the EDC had already committed to providing the $300,000 for the project?  Especially when he signed a personal guarantee to repay the $300,000 to the EDC if the project failed?

The government, in its rush to beat the statute of limitations, never answered these fundamental questions.

### 2.  Facts Specific to Severance

The government indicted Wadhwani along with co-defendant Ricardo Quintanilla (and other unnamed individuals) on charges of (i) conspiracy to commit honest services wire fraud and (ii) honest services wire fraud.  Quintanilla (but not Wadhwani) is also charged in the Weslaco Water Plant case on at least 18-counts, including conspiracy to commit honest service wire fraud, honest services wire fraud, federal program bribery, conspiracy to launder monetary instruments, money laundering, and violations of the travel act.

The government, relying on facts related to the Weslaco Water Plant case, has suggested that Wadhwani's case is equally as "complex."  *See Motion for Continuance and to Designate Case as Complex.*  As Defendant has shown, nothing could be further from the truth.  *See  D.'s Opposition to Government's Motion for Continuance and Request to Designate This Case as Complex.*  The allegations specific to Wadhwani are far simpler and less complex than the Weslaco Water Plant case and Quintanilla's role in it.

Indeed, as the government has argued in its previous motion, the Weslaco Water Plant case is complex because it involves more than $20 million in cost overruns related to multiple bribes; more than 125,000 documents, multiple defendants, with indictments against certain individual defendants include as many as 60 charges.  Here, Wadhwani has a single co-defendant; he is charged with two related counts of honest services (even though he is not a public official); and is

alleged to have participated in a scheme involving $75,000, which happened approximately six years ago.  While the  government cites to 125,000 documents at issue in the Water Plant investigation as a basis to designate this case as "complex," it omits the fact that the evidence turned over by the government to the defense in *this* case totals a single file folder (not even a banker's box).  In fact, at the hearing to modify Wadhwani's bond conditions, the government told the defense (i) that there was hardly any paper evidence, (ii) that it intended to call 5 or 6 witnesses, and (iii) that it expected its case-in-chief to last 2.5 days.  The scope and charges against Wadhwani are plainly far less complex than the government's claims against the defendants in the Water Plant case.

There is yet another significant difference between the Water Plant case and Wadhwani's defense.  In the Water Plant case, the defendants conspired amongst themselves to accept bribes in return for awarding lucrative contracts related to the construction of the Water Plant.  There was a true conspiracy in which the defendants, including co-defendant Quintanilla, worked together in a racket or scheme to defraud innocent people by forcibly soliciting kickbacks and bribes. Wadhwani was not part of the rogue group that is central to the Water Plant case.

To the contrary: Wadhwani is a victim of those individuals.  The evidence will show at trial that Wadhwani was extorted and threatened by Quintanilla, Leo Lopez, Jerry Tafolla, and others.  He was told to pay money or his hotel project—which he personally guaranteed—would be continuously delayed by the city, draining his resources and threatening his company with financial ruin. Wadhwani was a victim of a shakedown, not a participant in a conspiracy.  The government, in its rush to beat the statute of limitations, did not diligently investigate the facts related to Wadhwani, and as a consequence, they have indicted an innocent man.

**ARGUMENT**

1. **Wadhwani will suffer irreparable prejudice unless his trial is severed from Quintanilla's.**

Rule 14 of the Federal Rules of Criminal Procedure authorize the Court to sever a trial to avoid prejudice to a defendant.  The Rule provides, in relevant part: "If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).

The Fifth Circuit explained that "in ruling on a motion to sever, a trial court must balance potential prejudice to the defendant against the public interest in joint trials where the case against each defendant arises from the same general transaction."  *See U.S. v. Simmons*, 374 F.3d 313, 317 (5th Cir. 2004). The Supreme Court notes that "when many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened."  *Id.* at 539 (citing *Kotteakos v. United States,* 328 U.S. 750, 774-75 (1946)).

Here, the government has admitted that the Weslaco Water Plant case is "complex" by citing facts specific to that case in its Motion for Continuance.  By allowing Quintanilla to be tried alongside Wadhwani, this matter goes from simple to complex, thus invoking the concerns articulated in *Simmons*.  *Id*.  There is a markedly different degree of alleged culpability between Quintanilla and Wadhwani:  Quintanilla is indicted in both cases and faces approximately 18-counts in the Water Plant case, while Wadhwani is charged with only two counts related to alleged honest services wire fraud in this matter.  Quintanilla worked on behalf of the rogue individuals who perpetrated the scheme at the Water Plant, while Wadhwani is a private developer who was simply trying to build a hotel in Weslaco.  Quintanilla worked for or in conjunction with Leo Lopez; Wadhwani, by contrast, was extorted and threatened by Lopez.  Based on these facts, and

under *Simmons*, there is a high degree of risk of prejudice to Wadhwani if this matter is not severed.

The general rule is try defendants named in the same indictment together because it "promote[s] efficiency and serve[s] the interests of justice by avoiding the scandal and inequality of inconsistent verdicts*." United States v. McRae*, 702 F.3d at 821 (5th Cir. 2012). However, the Federal Rules of Criminal Procedure recognize that there are exceptions to this rule: namely, when the prejudice to a defendant in being tried jointly is greater than the public's interest in judicial economy. *See McRae,* 702 F.3d at 821-22 (holding trial court abused its discretion in failing to sever). To sever a trial, a defendant need only show that (i) the joint trial prejudices him to an extent that the district court cannot provide adequate protection and (ii) the prejudice outweighs the government's interest in economy of judicial administration. *United States v. Ledezma-Cepeda*, 894 F3d 686, 690 (5th Cir. 2018).

The *McRae* decision is instructive. *See McRae,* 702 F.3d at 813-19, 24 (5th Cir. 2012). In that case, the court found prejudice when a defendant police officer was accused of excessive force and unlawful discharge of his firearm for shooting a man that he believed to be a threat. In contrast, the co-defendant police officers were charged with additional civil rights violations, including burning a dead body, beating citizens, and making false statements to the FBI. *Id.* The court noted that certain evidence would have been inadmissible against Warren had he been tried alone. *Id.* The appellate court acknowledged defense counsel's argument that the "spillover effect" from evidence presented in connection with his four co-defendants was prejudicial and denied him a fair trial. *Id.* at 822.

In *United States v. Erwin*, the Fifth Circuit reversed the conviction of a defendant whose perjury charges were only "peripherally related" to a larger drug and racketeering conspiracy. *See Erwin*, 793 F.2d 656, 665 (5th Cir. 1986) (reversing conviction for failure to sever). The court

concluded that, as the trial progressed, very little of the "mountainous evidence" presented at trial "was usable against her, and almost none of it applied directly."  *Id*.  The court held that the prejudice from the joint trial "far outweighed" any benefit of judicial economy.  *Id*.

Similarly, in *United States v. Cortinas*, the court held a limiting instruction was inadequate when defendants were charged with money laundering and drug possession as part of a larger drug conspiracy.  *See United States v. Cortinas*, 142 F.3d 242 (5th Cir. 1998). The evidence and testimony admitted at trial described violent gang activity, including a drive-by shooting. "Prejudice was found in that case because the defendants were never associated with the gang, and because the evidence of the gang's activities was 'highly inflammatory' …."  *United States v. Bieganowski*, 313 F.3d 264, 288 (5th Cir. 2002) (citing *Cortinas*, 142 F.3d at 248).

These three decisions recognize that circumstances may be present where the prejudice to a defendant from joinder with a co-defendant in a joint trial overrules the interest in judicial economy.  Those circumstances are present here.  The spillover from Quintanilla's participation in the Water Plant racket will tar Wadhwani with the same brush.  This will be highly prejudicial to his defense.  There is no allegation whatsoever that Wadhwani participated with Lopez, Tafolla, and other members of the Weslaco gang or other developers or the City of Weslaco to add approximately $20 million to the tab for the Water Plant.  While the government alleges that Quintanilla was the "bagman" for Lopez's group, Wadhwani was a private citizen on the receiving end of threats and coercion.  Quintanilla held the bag open for the Weslaco gang; Wadhwani was forced to fill it up at his peril.

Indeed, Wadhwani will present evidence that Ricardo Quintanilla was part of a rogue group that for a time controlled the Economic Development Corporation of Weslaco ("EDC") and the City Commission.  This group manipulated every step of the development process, from awarding

initial development contracts, to approving plans, to controlling distribution of money, inspections, and permits.   Co-defendant Quintanilla and others extorted individuals and businesses seeking to develop projects in Weslaco.  Wadhwani was one of multiple people that was subjected to extortion and threats.

In Wadhwani's trial, there will be no evidence that he was in any way associated with the acts of Quintanilla in extorting money from other developers or participating in the racketeering and fraud aimed at the Weslaco Water Plant.  Unlike Quintanilla, Wadhwani was not charged with any crimes relating to the Water Plant, much less 18-counts or more.  But, if severance is not granted, he will be required to sit before the jury while the government presents emotionally charged testimony regarding $20 million in cost overruns at the Weslaco Water Plant.  His name will be "bandied about the fringes of those offenses" as part of the government's claims against Quintanilla.  *McRae*, 702 F.3d at 823.  In sum, the spillover effect from the cumulative evidence and testimony to be offered against Quintanilla is highly likely to overwhelm and confuse the jury.  *Id*. at 827 ("Here, … we are unconvinced that limiting instructions did, or could have cured the prejudice of the spillover effect from the government's case against McCabe…").  This is a simple matter: Did Wadhwani commit some form of honest services offense, or was he extorted and shaken down by Quintanilla and his cronies?  Trying Quintanilla at the same time as Wadhwani will confuse the jury and interject a prejudicial level of complexity.  Under these circumstances, the Court should grant Wadhwani's motion for severance.

**2.  Wadhwani's constitutional rights will be impinged unless the trial is severed.**

Defendants have a Sixth Amendment right to confront the witnesses against them, and a Fifth Amendment right not to be made witnesses against themselves. "In a joint trial, these rights collide when co-defendants implicate each other in confessions that are introduced as evidence."

*United States v. Ortiz*, 315 F. 3d 873, 899 (8th Cir. 2002).  As discussed in this motion, Wadhwani is asserting a defense that directly implicates his co-defendant Quintanilla in the racketeering and extortion ring led by Leo Lopez.

In *Bruton v. United States,* the trial court admitted into evidence the oral confession of George Bruton's nontestifying co-defendant.  That individual testified that he and Bruton committed armed robbery together, but instructed the jury not to consider the confession against Bruton.  The Supreme Court held that notwithstanding such an instruction, admission of the nontestifying co-defendant's extrajudicial statement violated the defendant's confrontation right. *Bruton* 391 U.S. 123, 124-25 (1968).

The government has not yet complied with its discovery obligations, but based upon information and belief, co-operator Leo Lopez was at some point wearing a wire.  He undoubtedly captured statements by Quintanilla.  The foregoing grounds are sufficient.  To the extent a statement by Quintanilla shows up in discovery, which Wadhwani has asked the government promptly to provide, Wadhwani reserves the right to supplement this motion and the record to add even more grounds for the requested severance.

## CONCLUSION & PRAYER

Severance is warranted and necessary.   Defendant Sunil Wadhwani respectfully asks this Court to grant his Motion for Severance, thereby severing his trial from Co-Defendant Ricardo

Quintanilla, and to grant him such further relief, in law and equity, to which he is justly entitled.

December 2, 2019.

McAllen, Texas.

Respectfully submitted,

GREGOR|CASSIDY|WYNNE PLLC

By: /s/ Michael Wynne_____
Michael Wynne
Texas State Bar No. 00785289
Shannon Drehner
Texas State Bar No. 24074155
909 Fannin Street, Suite 3800
Houston, TX 77010
Telephone: (281) 450-7403
Fax: (713) 759-9555
mwynne@gcfirm.com
shannon@drehnerlaw.com

David G. Oliveira
ROERIG, OLIVEIRA & FISHER, L.L.P.
506 East Dove Avenue
McAllen, TX 78504
Telephone: (956) 393-6300
Fax: (956) 386-1625
doliveria@rofllp.com

*Attorneys for Defendant Sunil Wadhwani*

## CERTIFICATE OF CONFERENCE

I certify that I contacted AUSA Bobby Lopez via e-mail on December 2, 2019 and the government is opposed to severance.  I called and left a message for Defendant Ricardo Quintanilla's attorney, Jaime Pena and also e-mailed a draft copy of the motion to him.  I did not receive a return e-mail or call from Mr. Pena at the time of filing this motion.  We therefore indicate that both parties are opposed to this motion.

By:  /s/ Michael J. Wynne___
Michael J. Wynne

## CERTIFICATE OF SERVICE

I certify that on December 2, 2019, a true and correct copy of this motion was served on all parties of record via ECF.

By:  /s/ *Michael J. Wynne*
Michael J. Wynne