1     IN THE UNITED STATES DISTRICT COURT

2     FOR THE SOUTHERN DISTRICT OF TEXAS

3     MCALLEN DIVISION

4  UNITED STATES OF AMERICA         §    CASE NOS. 7:19-CR-1995-1
                                    §              7:19-CR-1995-2
5                                   §    MCALLEN, TEXAS
   VERSUS                           §    FRIDAY,
6                                   §    JANUARY 3, 2020
   RICARDO QUINTANILLA (1)          §
7  SUNIL WADHWANI (2)               §    4:40 P.M. TO 5:02 P.M.

8
            STATUS CONFERENCE
9   (PARTIAL TRANSCRIPT - EXCLUDES SEALED BENCH CONFERENCE)

10     BEFORE THE HONORABLE RICARDO H. HINOJOSA
              UNITED STATES DISTRICT JUDGE
11

12     APPEARANCES:                       SEE NEXT PAGE

13     ELECTRONIC RECORDING OFFICER: ANTONIO TIJERINA

14

15

16

17

18

19

20            TRANSCRIPTION SERVICE BY:

21        JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                935 ELDRIDGE ROAD, #144
22              SUGAR LAND, TEXAS 77478
                  Tel: 281-277-5325
23            www.judicialtranscribers.com

24
      Proceedings recorded by electronic sound recording;
25       transcript produced by transcription service.


         JUDICIAL TRANSCRIBERS OF TEXAS, LLC

```
 1                         APPEARANCES:

 2

 3  FOR THE PLAINTIFF:           US ATTORNEY'S OFFICE
                                 Roberto Lopez, Jr., Esq.
 4                               1701 W. Bus. Hwy. 83
                                 Suite 600
 5                               McAllen, TX  78501
                                 956-618-8010
 6

 7
    FOR THE DEFENDANT,
 8  RICARDO QUINTANILLA:         PEÑA GARZA, PLLC
                                 Jaime Peña, Esq.
 9                               900 Kerria Ave.
                                 McAllen, TX  78501
10                               956-948-2221

11

12  FOR THE DEFENDANT,
    SUNIL WADHWANI:              ROERIG OLIVEIRA AND FISHER
13                               David G. Oliveira, Esq.
                                 10255 N. 10th Street
14                               McAllen, TX  78504
                                 956-393-6300
15
                                 DREHNER LAW
16                               Shannon M. Drehner, Esq.
                                 917 Franklin Street
17                               Suite 550
                                 Houston, TX  77002
18                               832-598-4460

19                               GREGOR CASSIDY WYNNE, PLLC
                                 Michael J. Wynne, Esq.
20                               909 Fannin, Ste. 3800
                                 Houston, TX  77010
21                               713-331-2458

22

23

24

25
```

1        MCALLEN, TEXAS; FRIDAY, JANUARY 3, 2020; 4:40 P.M.

2            THE COURT:  Please be seated.

3            Criminal No. M-19-1995, the United States of

4   America versus Ricardo Quintanilla, --

5            MR. PEÑA:  Jaime Peña --

6            THE COURT:  -- also known as Richard, and Sunil

7   Wadhwani.

8            MR. LOPEZ:  Government is present and ready, Your

9   Honor, Bob Lopez on behalf of the Government.

10           MR. PEÑA:  Jaime Peña for Richard Quintanilla.

11  He's in the courtroom, Your Honor.

12           MR. OLIVEIRA:  Your Honor, David Oliveira, Shannon

13  Drehner, and Michael Wynne on behalf of Defendant Sunil

14  Wadhwani, who is present.

15           THE COURT:  Okay.  With regards to Mr. Peña --

16           MR. PEÑA:  Yes.

17           THE COURT:  -- you have filed a motion as you did

18  in another case, that you just want to adopt the motions of

19  the other Defendant, and as I told you in the other case,

20  you have to file individual motions.

21           MR. PEÑA:  I understand that, Your Honor.

22           THE COURT:  Okay.  You have filed some individual

23  motions, but any other motion that you want to file, I'm not

24  just going to let you adopt somebody else's motion.

25           MR. PEÑA:  I understand that, Your Honor.

1  THE COURT: Okay. The issue this afternoon is the
2  notice by the Government with regards to the potential
3  conflict of Mr. Wynne in representing Mr. Wadhwani.
4  And so where are we with regards to that?
5  Mr. Gould, you were appointed to speak to
6  Mr. Wadhwani?
7  MR. GOULD: I did, Your Honor. And speak
8  with Mr. Wadhwani.
9  THE COURT: And can you-all both come up here?
10  MR. GOULD: Yes, Your Honor.
11  THE COURT: And did you explain to him the
12  potential conflict here?
13  MR. GOULD: I did explain to him --
14  THE COURT: That Mr. Wynne seems to have also
15  represented the Co-Defendant at some point, or -- plus
16  witnesses and cooperators and all sorts of situations?
17  MR. GOULD: I explained several of the potential
18  conflicts. I'm not familiar with all of the facts of the
19  case and exactly the interplay between this, that or the
20  other witness.
21  But I did speak with Mr. Wadhwani about the
22  possible conflicts. I can tell you this, also, though.
23  When I spoke with Mr. Wadhwani, one of the things he said is
24  that he likes the job that Mr. Wynne has been doing. He
25  believes in Mr. Wynne. He has done a great deal of work.

1   He has several other people working on the case, as well.  I
2   know that he feels as though he's invested a lot of time and
3   money into the case.
4           But I also told Mr. Wadhwani that, if, for
5   example, we had been appointed to represent him and we were
6   presented with the same set of facts, that I would just file
7   a motion to withdraw under those circumstances.
8           On the other hand, I mean, the impression I get --
9   without having really discussed any particulars with anyone
10  -- is that essentially the defense is whatever money was
11  paid to this other individual was for the purpose of
12  legitimate consulting fees opposed to a bribe, and it would
13  appear to me --
14          THE COURT:  So this other individual being who?
15          MR. GOULD:  I'm trying to remember that.  Let's
16  see.  It was Mr. --
17          THE COURT:  The Government's statement is that
18  Mr. Wynne has represented Daniel Garcia at one point, and
19  some other people on other points?
20          MR. LOPEZ:  He has represented Daniel Garcia, Your
21  Honor, as well as Anil Gautam Jondonni (phonetic), who is
22  Mr. Wadhwani's executive assistant, so to speak, Your Honor,
23  as well as --
24          THE COURT:  Who has a target letter, but has not
25  been charged?

1       MR. LOPEZ:  That is correct, Your Honor.  And
2  actually, the attorney that was representing Mr. Jondonni,
3  Mr. Cassidy, is actually in the courtroom here today.
4       THE COURT:  But Mr. Cassidy also used to work with
5  Mr. Wynne?
6       MR. LOPEZ:  That's another issue, Your Honor.
7       THE COURT:  And he was working with Mr. Wynne when
8  he represented Mr. Jondonni?
9       MR. LOPEZ:  During portions of that
10 representation, that's correct, Your Honor.
11      THE COURT:  Right.  And so the conflict belongs to
12 the whole law firm, not just to --
13      MR. LOPEZ:  That would be correct, Your Honor,
14 that is the Government's position.
15      And in addition to that, Your Honor, Mr. Wynne --
16 the Government reached out to Mr. Wynne at the time that we
17 were serving subpoenas on business entities owned in part by
18 Mr. Wadhwani.  We explained to Mr. Wynne the issues that may
19 arise in accepting service of those subpoenas.
20      Nonetheless, Mr. Wynne did accept service of those
21 subpoenas on those business entities, Your Honor, and
22 actually provided some documentation -- some documents on a
23 rolling production basis, in reference to those subpoenas.
24 It is my understanding the representations made at prior
25 court hearings, that those subpoenas were gathered through

1  Mr. Wynne's interactions with Mr. Gautam Jondonni
2  (phonetic), who --
3          THE COURT:  Okay.  And the claim on their part is
4  with Mr. Gautam Jondonni.  There's a statute of limitations
5  that has already run with regards to any criminal charges
6  involving these allegations, and that --
7          MR. LOPEZ:  Your Honor, while I cannot speak to
8  the substantive -- in regards to the conspiracy and
9  substantive charges, that's correct, Your Honor.  There are
10 other issues that if --
11         THE COURT:  You haven't withdrawn your target
12 letter to Mr. Gautam Jondonni, is what you're trying to tell
13 me?
14         MR. LOPEZ:  That is -- that is correct, Your
15 Honor.
16         THE COURT:  And you're not willing to say that
17 there is not a possibility of charges brought against him?
18         MR. LOPEZ:  That is correct, Your Honor.
19         THE COURT:  It would not be in this Indictment --
20 in superseding this Indictment, or --
21         MR. LOPEZ:  There's some -- there is some --
22         THE COURT:  -- could it be in the same case,
23 possibly?
24         MR. LOPEZ:  There is a possibility, Your Honor.
25 There are some tangential issues I can't say that it would

1  not be on the substantive wire fraud or conspiracy to commit
2  wire fraud count, though.
3              THE COURT:  Okay.  And the reason that
4  Mr. Wadhwani continues, even though he's been told the
5  possibility -- although he has other lawyers -- the reason
6  this continues to be a possibility is?
7              MR. GOULD:  The reason --
8              THE COURT:  You were able to explain all that to
9  him, right?
10             MR. GOULD:  I spoke with him about a number of
11 potential conflicts that are present in this, and again,
12 although, I mean, as far as Mr. Gautam Jondonni, I'm not
13 sure if that was a situation where he mistakenly believed he
14 was being represented by Mr. Wynne because Mr. Wynne at
15 least at one point was acting on behalf of the corporation.
16             And Mr. Gautam Jondonni believed that, therefore,
17 he represented him, as well, but even whether --
18             THE COURT:  And I guess he has also represented
19 Duwand LaSalle Storage, LLC (phonetic).
20             MR. GOULD:  Right.  He represented --
21             THE COURT:  As well as Sarina Groups, Limited
22 (phonetic)?
23             MR. LOPEZ:  That's correct.
24             THE COURT:  Mr. Wadhwani is part of that Sarina
25 Group, and I guess is it Mrs. Wadhwani who also owns an

1  interest in that?  That Selma?
2          MR. OLIVEIRA:  That's correct, Your Honor.
3          THE COURT:  Okay.  And then we also have
4  Mr. Wadhwani and Johnie Singh (phonetic), as owners of
5  Nuwana Self Storage, LLC (phonetic)?  They have attempted to
6  file conflict of interest waivers.  What they're missing is
7  that they should be done individually, rather than all --
8  Mr. Gautam Jondonni doing the same one as Mr. Wadhwani.  The
9  conflict is there possibly with both of them.  I don't think
10 I should get a waiver from both of them in the same form --
11 I mean, each one of them should each have their separate
12 one.
13         MR. OLIVEIRA:  We will prepare a separate.
14         THE COURT:  The other thing is that they need to
15 indicate to the Court that it's been explained to them.
16 Certainly, I'm sure Mr. Gould touched on this, on appeal
17 you're not going to be able to be claiming that there was a
18 conflict of interest by the attorney, that that would be a
19 reason for an appeal or for some kind of violation on the
20 part of the Government here.
21         That he cannot use that later on as either a
22 habeas petition or an appeal.  If he's going to sign a
23 waiver here, that means he understood it all along and that
24 he still wants to proceed.  So it would be -- you cannot use
25 this as an appellate reason if you lose the case to say, oh,

1  I had representation from somebody who shouldn't have been
2  giving me representation, or later on filling a habeas
3  petition that my lawyer didn't properly explain it to me,
4  when we've had Mr. Gould actually explain it to him and him
5  making an informed decision on his part.  He needs to inform
6  me, if I'm supposed to accept a waiver, that he clearly
7  understands that it cannot be a basis for an appeal if there
8  is a conviction, or a basis for a writ of habeas corpus
9  afterwards without his attorneys, claiming that his
10 constitutional rights were violated because he had an
11 attorney with a conflict of interest.
12             MR. OLIVEIRA:  We've explained that to him, Your
13 Honor.
14             THE COURT:  Okay.  And it needs to be in his
15 affidavit if I'm to accept this.
16             MR. OLIVEIRA:  We will amend the affidavit.  We
17 will --
18             THE COURT:  I'm not saying that he should or he
19 shouldn't.  I'm just saying that he needs to understand
20 that.  That would be a serious concern -- should be a
21 serious concern for him that if for some reason there is a
22 conviction here, that he cannot -- once he waives this
23 conflict, he can't use that as a basis for appeal or a
24 habeas petition later.
25             MR. OLIVEIRA:  We understand that, Your Honor.

1            Your Honor, earlier you made, I think, a statement
2   that Mr. Wynne had represented one of the Co-Defendants.
3   That's not correct.  He has not represented any Co-
4   Defendants.  He represented Daniel Garcia.
5            THE COURT:  Daniel Garcia, who may be a witness in
6   this case or has been cooperator in this case or I don't
7   even know what his role is in this case.
8            MR. OLIVEIRA:  He has not -- we have not been told
9   that he is a witness in this case, Your Honor.  The only
10  witness that we've been told about is Leo Lopez (phonetic)
11  and Jerry --
12           THE COURT:  Well, that's the problem.  That
13  somehow there's been some information shared by Mr. Garcia
14  with regards to Mr. Lopez, who therefore creates the problem
15  here of Mr. Garcia defending himself, I suspect.  I don't
16  know what side he is with Mr. Lopez on his case or not, I
17  suspect that Mr. Garcia was giving information on Mr. Lopez.
18           MR. LOPEZ:  That is correct, Your Honor.
19           MR. GOULD:  Which then led in part to Mr. Wadhwani
20  being busted after that.
21           THE COURT:  Right.
22           MR. GOULD:  And I did discuss that with him, as
23  well.
24           THE COURT:  And are you satisfied that
25  Mr. Wadhwani understands the potential problem here?

1         MR. GOULD:  I'm satisfied that he understands it.
2  I mean, again, I did explain it all to him, and as I
3  mentioned before, I said --
4         THE COURT:  And there's a reason why we appointed
5  him -- why I appointed him, so that you would get totally
6  independent information, Mr. Wadhwani.  Because the right to
7  a counsel is a very important right that we have, as you
8  know, in the United States.  And it's taken very seriously
9  by the courts and it's taken very seriously, frankly, by our
10 Constitution and the Bill of Rights that we all share, as
11 you know.
12        DEFENDANT WADHWANI:  I understand, Your Honor.
13        THE COURT:  And that includes every single one of
14 us here in the United States, and it's a very important
15 right.  And as judges, we get very concerned when somebody
16 may be in a situation where there may be a conflict.
17        Most of the time it's settled by the attorney
18 saying, well, I have a conflict and I'm not going to work on
19 this case.  There are times, obviously, when the client says
20 I would still want you to work on my case, but -- and we
21 allow that, but it has to be clear to the Court that the
22 client understands every possibility of any potential danger
23 with regards to that and still wants it to happen that way.
24        DEFENDANT WADHWANI:  Can I say something, Your
25 Honor?

1          THE COURT:  I don't think I've ever stopped
2  anybody from saying something, unless it was really, really
3  bad.
4          DEFENDANT WADHWANI:  It's not going to be anything
5  bad, Your Honor.
6          THE COURT:  Or yelling.  Yes, you can say whatever
7  you want.
8          DEFENDANT WADHWANI:  Your Honor, it's something
9  that happened seven years ago.  Your Honor, honestly at my
10 age I don't remember things seven days ago.  Mr. Wynne has
11 been with me there from the first day, on the first day he's
12 been.  We've spent so much time, you know, investigating,
13 interviews, and he'd be the person to tell my side of the
14 story, Your Honor.
15         Your Honor, I'm not a bad person or a criminal.
16 Give him a chance to prove that.  He's a good man.  And he's
17 really, really helped me through hard times.  It's been
18 really tough on the family, Your Honor.
19         THE COURT:  Well, it's not a question of giving
20 him a chance.  My important role here is to give you a
21 chance to have counsel that will represent you to the best
22 of their ability from the standpoint of no conflict.
23         DEFENDANT WADHWANI:  I understand that, Your
24 Honor.
25         THE COURT:  It's not -- he doesn't need for me to

1  give him a chance.  That chance that needs to be given is
2  for your constitutional rights and your right to have your
3  own attorney, who has no conflict, and that the only master
4  in his case would be you.
5              DEFENDANT WADHWANI:  I understand that, Your
6  Honor.
7              THE COURT:  That you would be the person that he
8  would be representing the entire time.
9              DEFENDANT WADHWANI:  Mr. Gould explained that to
10 me very, very clear, Your Honor.  I even thought about --
11             THE COURT:  Mr. Gould does a very good job of
12 explaining things to his clients and that's why I would be
13 -- I feel very comfortable appointing somebody from the
14 Public Defender's Office --
15             DEFENDANT WADHWANI:  He's a good man.
16             THE COURT:  -- to represent somebody with regards
17 to explaining to them their right to counsel.
18             DEFENDANT WADHWANI:  I understand, Your Honor.
19             THE COURT:  And so the only one that at the
20 present time in this case has a conflict or because of
21 potential conflicts would be Mr. Wadhwani, Mr. -- because
22 Mr. Gautam Jondonni is not a Defendant in this case at this
23 point?
24             MR. LOPEZ:  That's correct, Your Honor.  There's
25 nothing in regards to Mr. Quintanilla either, Your Honor.

1             THE COURT:  And I take it that you also have had
2  this discussion with him about the potential conflict?
3             MR. OLIVEIRA:  I have, Your Honor.  And as you
4  know, I practice mostly on the civil side, but I was a
5  prosecutor.  I understand the potential conflicts.  I've
6  explained them to him.  Mr. Wadhwani, in addition to being
7  my client, is a very good friend of mine and if I felt that
8  there was any potential conflicts --
9             THE COURT:  Are you willing to tell me that you're
10 a friend of his?
11            MR. OLIVEIRA:  And I --
12            THE COURT:  I will not put you under oath.
13            DEFENDANT WADHWANI:  Since we were kids, Your
14 Honor.
15            MR. OLIVEIRA:  And if I believed for one minute --
16            THE COURT:  Now that's an admission against
17 interest.
18            MR. OLIVEIRA:  And Your Honor, if I believed for
19 one minute that that potential conflict would harm him,
20 Mr. Wadhwani, I would tell him and I wouldn't hesitate to
21 find --
22            THE COURT:  Has he changed since he was a kid?
23            DEFENDANT WADHWANI:  No, sir.
24            THE COURT:  That's what I thought.
25            DEFENDANT WADHWANI:  He's a good man, Your Honor.

1      THE COURT: I can say that about his wife.
2      (Laughter.)
3      DEFENDANT WADHWANI: She's related to my wife,
4 Your Honor. I know who you're talking about.
5      THE COURT: Well, if this conflict of interest
6 waiver is written in the way that I suggested and
7 separately, if that's the way Mr. Wadhwani wants to proceed,
8 every warning has been given to him.
9      MR. LOPEZ: Your Honor, I'm afraid that the
10 Government still has some concerns, Your Honor. While
11 waivers have been filed, Your Honor, there is no waiver from
12 Mr. Garcia. In talking to his attorneys, Mr. Allen Ramirez,
13 Mr. Garcia is not going to be signing any waiver, nor is
14 that anticipated. And at that point in time, Your Honor, at
15 the time that Mr. Lopez was to testify, I believe this
16 situation arises from potential conflict to an actual
17 conflict, Your Honor.
18      THE COURT: Why?
19      MR. LOPEZ: Your Honor, there is some information
20 that was being given by -- Your Honor, actually may we
21 approach the Bench on this particular issue?
22      THE COURT: Sure, sure.
23      (Sealed Bench Conference held from 4:55 p.m. to
24 5:02:27 p.m. and not transcribed herein.)
25      THE COURT: We'll definitely see you-all on

1   February the 12th at -- we'll definitely see you-all on
2   February the 12th on the hour and time -- the day and time
3   that you-all have, if not before then, for this one
4   particular issue that continues to be an issue.
5          MR. LOPEZ:  Very well, Your Honor.
6          THE COURT:  If you-all don't have anything else,
7   you-all can be excused.  Thank you.
8       (The parties thank the Court.)
9       (Proceedings adjourned at 5:02:53 p.m.)
10                    *  *  *  *  *
11         *I certify that the foregoing is a correct*
12  *transcript to the best of my ability produced from the*
13  *electronic sound recording of the proceedings in the above-*
14  *entitled matter.*
15  */S/ MARY D. HENRY*
16  *CERTIFIED BY THE AMERICAN ASSOCIATION OF*
17  *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*
18  *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*
19  *JTT TRANSCRIPT #61505*
20  *DATE FILED:  JANUARY 30, 2020*
21
22
23
24
25