UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

UNITED STATES OF AMERICA     §
    §
VS.     §     CASE NO. 7:19-cr-01995-1
    §
RICARDO QUINTANILLA     §

**DEFENDANT'S OMNIBUS MOTION TO SEPARATELY AND INDIVIDUALLY FILE
PREVIOUSLY JOINED PRETRIAL MOTIONS FILED BY CO-DEFENDANT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, RICARDO QUINTANILLA, by and through his undersigned

counsel, and respectfully files Defendant's Omnibus Motion to Separately and Individually File

Previously Joined Pretrial Motions Filed by Co-Defendant, and for good cause would show the

following:

**SUMMARY OF MOTION**

On October 25, 2019, Defendant filed Defendant's Motion to Join and Adopt Motions filed

by co-defendant as a precautionary maneuver to preserve the rights of Defendant. (Dkt. 35).

During a status conference on January 3, 2020, the Court instructed defense counsel to individually

and separately file any pretrial motions Defendant wanted to advance before the Court as opposed

to a general motion joining co-defendant's motions.  This motion is intended to comply with the

Court's instruction and only includes motions filed by co-defendant.  It does not raise any

additional motions and consists of the following:

1. **Opposed Motion for the Production of *Brady* and *Giglio* Material and
   other Material Favorable to the Accused.**  Although the government
   typically side-steps this obligation through its "open file" discovery file,
   due to the inherent nature of this case, Defendant is requesting that the
   government produce a copy of discovery to Defendant in a format

consistent with avoiding suppression and concealment through what is typically called a "data dump."

2. **Opposed Motion for Early Production of *Jencks* Act Materials.** Due to the specific facts and circumstances of this case, Defendant is requesting that *Jencks* Act material be provided 14 days before trial to furnish counsel with sufficient time to examine and utilize this material in a meaningful manner before and during trial.

3. **Opposed Motion Requesting Early Determination of the Admissibility of Statements by Alleged Co-Conspirators.** In light of new allegations made by co-defendant in response to sealed motions by the government, Defendant is requesting a hearing prior to trial to avoid unfairly and irreparably prejudicing the jury at trial.

4. **Opposed Motion to Disclose Identity of Any and All of the Government's Confidential Informants.** Defendant is requesting that the Court order the government disclose confidential informants at least 14 days prior to the start of trial to allow for follow-up discovery and investigation.

5. **Opposed Motion to Dismiss Based on the Government's Misuse of the Grand Jury, or in the Alternative, to Strike or Exclude Evidence.** Defendant is requesting that the Court dismiss the case or, in the very least, exclude evidence resulting from abuse of the Grand Jury process.

6. **Motion to Dismiss for Violation of Right to Speedy Trial Under the Sixth Amendment and 18 U.S.C. §3161.** Defendant is requesting the Court dismiss the case for violation of his 6th Amendment and statutory right to speedy trial.

## MOTIONS & AUTHORITIES

1. **Opposed Motion for the Production of *Brady* and *Giglio* Material and other Material Favorable to the Accused.**

This motion is filed pursuant to the rights granted to Defendant under the 5th and 6th Amendments to the U.S. Constitution and by the Supreme Court of the United States as stated in *Brady v. Maryland,* 373 U.S. 83 (1963) and in *Giglio v. United States,* 405 U.S. 150 (1972). The government routinely attempts to satisfy this obligation by having an "open file" policy of discovery materials made available for inspection by a defendant. While on its face open file discovery appears to buttress the government against allegations of *Brady* violations by *making*

*available* all material in the government's possession, emerging case law has begun to call into question the practice of "dumping" voluminous discovery on a defendant. Without the safeguards enunciated by the courts, the practical effect of this practice on this type of case is the same as suppressing or concealing the *Brady* material. To avoid this effect, Defendant asks this Court to instruct the U.S. Attorney to perform the following two actions:

First, that the government produce copies of all evidence or information within the possession, custody or control of the United States, or any of its agencies which it considers to be contained or included as a part of its "open file" policy. This includes what is known to exist or through the exercise of due diligence may become known and which is favorable to Defendant on the issue of guilt or innocence or which may tend to mitigate or lessen any punishment in the event the Defendant is found guilty or which may affect the credibility of, or may be used to impeach the credibility of any government witnesses including, but not limited to law enforcement officers. *See Brady* and *Giglio.*

Second, that the government make the produced discovery searchable, provide an index of discovery produced, and provide a set of "hot documents" it considers particularly germane to Defendant. These are the steps that the Fifth Circuit has found to be reasonable when dealing with voluminous "open file" discovery. *See United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009). The government cannot just rest on an open file policy as conclusive satisfaction of its *Brady* obligations. In *Skilling*, the Fifth Circuit stated that "we do not hold that the use of voluminous open file can never violate *Brady*." *Id.* The court identified several factors that should be evaluated when determining whether there has been an impermissible "data dump" in violation of *Brady*: whether the open file production contained "pointless or superfluous" materials, whether the

production was so voluminous as to be "unduly onerous," and whether the placement of exculpatory material within the production indicated an attempt to conceal such documents. *Id.*

Other cases also caution against permitting large-scale, unorganized voluminous discovery production. In *United States v. Sayler*, 2010 U.S. Dist. LEXIS 77617, at * 19-23 (E.D. Cal. Aug. 2, 2010), the court ordered the prosecution to identify Rule 16, *Brady*, and *Giglio* documents contained in a voluminous discovery production "as a matter of case management (and fairness)." There the court noted:

> "In light of the above, and to return to the real problem here, it bears repetition to emphasize that the ultimate issue is whether there is 'disclosure' in the letter and spirit of *Brady/Giglio* simply by turning over a mountain of 'everything' acquired over half a decade, and telling defense counsel nothing about where exculpatory/impeaching information can be found. Again, 'the government cannot meet its *Brady* obligations by providing [the defendant] with access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack.' Or, as the undersigned put it in the initial order: '[A]t some point (long since passed in this case) a duty to disclose may be unfulfilled by disclosing too much; at some point, 'disclosure,' in order to be meaningful, requires 'identification' as well." *Id.* at *19-20 (internal citations omitted).

*See also, United States v. Warshak*, 631 F.3d 266, 297-98 (6th Cir. 2010) (cautioning the prosecution against the practice of "lard[ing] its production with entirely irrelevant documents"); *United States v. Ohle*, 2011 U.S. Dist. LEXIS 12581, at *10 (S.D.N.Y. Feb. 7, 2011) (no discovery violation where the evidence is equally accessible by both parties and the production was made electronically searchable); *United States v. Hsia*, 24 F.Supp. 2d 14, 29-30 (D.D.C. 1998) (the prosecution cannot meet its *Brady* obligations by providing the defendant with access to voluminous documents and then claiming that she should have been able to find the exculpatory information within the massive production); *Emmett v. Ricketts*, 397 F.Supp. 1025, 1043 (N.D. Ga. 1975) (the prosecutorial duty to produce exculpatory evidence imposed by *Brady* may not be discharged by simply dumping a voluminous mass of files, tapes, and documentary evidence).

In another recent case, a federal district court drew on civil discovery principles to inform the criminal discovery process in a case involving massive amounts of electronic information. In *United States v. O'Keefe*, 537 F.Supp. 2d 14 (D.D.C. 2008), the court held that a voluminous discovery production in a criminal matter should adhere to comparable civil standards set forth in the Federal Rules of Civil Procedure. The defendants in *O'Keefe* argued that the manner in which the prosecution produced voluminous discovery made it impossible to identify the source or custodian of the document. Acknowledging that there is no analogous criminal rule to guide massive discovery productions, the court in *O'Keefe* looked directly to Rule 34 of the Federal Rules of Civil Procedure, which requires that documents produced in discovery be produced in the form in which they are ordinarily maintained and requires that such documents be organized and labelled to correspond with the categories of the request for production. Fed. R. Civ. P. 34(b)(2)(E)(i). In addition, Rule 34 requires electronically-stored information produced in discovery to be provided in the form in which it is ordinarily maintained or in "a reasonably usable form." Fed. R. Civ. P. 34(b)(2)(E)(ii). Using civil rules as guidance, the court required that an index be created of the discovery and required that the discovery produced by the prosecution be produced "in a reasonably usable form."

Consistent with *Skilling*, *O'Keefe*, and other recent cases, it is evident that voluminous discovery, absent indexing, making the discovery searchable, and providing a "hot documents" category of particularly germane materials, potentially runs afoul of *Brady*. As such, to ensure fairness and justice, Defendant asks the Court to grant Defendant's requests.

2. **Opposed Motion for Early Production of *Jencks* Act Materials.**

Defendant moves this Court pursuant to 18 U.S.C §3500, Federal Rule of Criminal Procedure 26.2, and the Fifth and Sixth Amendments to the United States Constitution, to order the government to produce *Jencks* Act materials at least 14 days prior to trial.

While the *Jencks* Act does not mandate disclosure of witness statements before the witness testifies, accommodations frequently must be made in advance of trial due to the number of witnesses and the delay that will be occasioned when discovery occurs mid-trial. *United States v. Holmes,* 722 F.2d 37 (4th Cir. 1983). In *United States v. Causey,* the Court stated that district courts in this circuit lack the power to order disclosure of *Jencks* Act material earlier than the statue provides. *United States v. Causey,* 356 F.Supp.2d 681, 698 (S.D. Tex. 2005). Nevertheless, in order to facilitate the defense's preparation for cross-examination, the government routinely agrees to produce *Jencks* Act material either before trial or prior to direct examination. *Id. See United States v. McKenzie,* 786 F.2d 602 (5th Cir. 1985) (Noting this court has recognized such early *Jencks* disclosure as a salutary practice that should be encouraged to avoid the interruptions and delay at trial that are inevitable if the defense does not receive the material until the conclusion of the direct testimony.)

*Jencks* Act material should be provided to the defense so as to furnish counsel with sufficient time to examine and utilize this material in a meaningful manner before and during trial. *Holmes,* 722 F.2d at 40. What that means in terms of timing depends on the specific facts and circumstances of the case. *Id.* It is clear, however, that the Court, pursuant to the Fifth and Sixth Amendments to the U.S. Constitution, its inherent supervisory powers, and Rule 2 of the Federal Rules of Criminal Procedure, has the authority to override the timing provisions set forth in the Act and in Rule 26.2. Indeed, Rule 26.2, unlike its predecessor the *Jencks* Act, contains no

language explicitly precluding the disclosure of witness statements prior to trial. *See* Fed. R. Crim. P. 26.2 and 18 U.S.C §3500(a).

As the Fourth Circuit noted, it is not uncommon, particularly "in cases where there are many statements or where the bulk of witness statements is large," for the government to agree or for the court to order early disclosure of *Jencks* material. *Holmes*, F.2d at 40. If *Jencks* material is provided to the Defendant as late as at trial, Defendant will be without the opportunity for appropriate investigation and preparation for cross-examination. *Id.* In order to avoid the delay in the progress of a trial, counsel should be afforded substantially earlier disclosure of *Jencks* Act material so as to permit them to complete their preparation. *Id.*

In *United States v. Hinton,* the District of Columbia Circuit recognized the potential impact of late *Jencks* disclosure upon the defendant's Sixth Amendment rights. *United States v. Hinton,* 631 F.2d 769, 782 (D.C. Cir. 1980). There, during a suppression hearing, defense counsel was provided with "voluminous *Jencks* material" in the form of FBI Form 302 witness statements. *Id.* at 781. The Circuit Court held that "in the rush and confusion" of the hearing, counsel failed to recognize "the critical importance of the 302's" and, as a result, the appellant was deprived of her constitutional right to the "informed, professional deliberation of counsel." *Id.* at 782.

In order to provide effective counsel to Defendant, the defense will require the *Jencks* material well before the jury is sworn. *See Holmes,* 722 F.2d at 41 (noting that providing materials one day before trial began did not "afford a reasonable opportunity to examine and digest" the documents). Given that the trial of this case is expected to take one-to-two weeks, the recesses which will be required by defense counsel will substantially delay what promises to be an already protracted proceeding. In addition to the obvious adverse impact on the court's calendar, such

delays will unfairly prejudice Defendant's Fifth and Sixth Amendment rights because Defendant and his counsel will be viewed by the jury as responsible for delays and the overall length of trial.

Finally, as argued by co-defendant in his motion, counsel knows of no prejudice that the government will suffer by such an Order.   Indeed, the government has represented that it is preparing other cases arising from the same investigation, so all of the witness preparation and organizing of *Jencks* documents should be completed well before the date on which such discovery is requested.

3. **Opposed Motion Requesting Early Determination of the Admissibility of Statements by Alleged Co-Conspirators.**

Defendant moves the Court to order a pre-trial *James* hearing. *See United States v. James*, 590 F.2d 575 (5th Cir. 1979). With each and every alleged co-conspirator statement offered during this trial, the *James* questions will have to be raised and answered: (1) whether the statements made by individuals who, along with Defendant, were members of the alleged conspiracy; (2) whether they were made during the course of the alleged conspiracy; and (3) whether they were made in furtherance of the alleged conspiracy. *Id.*; Fed. R. Evid. 801(d)(2)(E).

In *James*, the Fifth Circuit recognized the problems posed by a multi-conspirator case, where at times hearsay from one co-conspirator can prejudice another co-conspirator. It first acknowledged and then fashioned a procedure (the *James* hearing) to deal with the reality that it is virtually impossible to avoid prejudice arising from the constant repetition of inadmissible statements simply by continually instructing the jury that they may be asked to disregard a co-conspirator's hearsay statements at the end of the trial. The admissibility of a co-conspirator's declarations in a conspiracy trial, however, pose problems precisely because they are relevant. Such evidence endangers the integrity of the trial because the relevancy and apparent probative value of the statements may be so highly prejudicial as to color other evidence even in the mind

of a conscientious juror—despite instructions to disregard the statements or to consider them conditionally. *James*, 590 F.2d at 579.

The relevance and inadmissibility of all hearsay evidence—especially any hearsay statements made by Sunil Wadhwani, Person A, Person B, and Commissioner A—hinges on its relationship to Ricardo Quintanilla.  This is especially critical given the recent representations by co-defendant in his responses to government motions filed under seal.  Therefore, these central questions of law and fact—the *James* questions—are unavoidable and should not be postponed.

The decision in *James* does not necessarily mandate a pre-trial hearing outside the presence of the jury. Where prejudice is not likely to result, a trial court could hold a hearing during a break in trial or at sidebar or consider the issue at the end of the government's case in chief. Nevertheless, *James* does instruct district courts to find the predicate facts before admitting out-of-court co-conspirator declarations unless there is some particular reason that it would be inconvenient. *See Id.*; *see also* Fed. R. Evid. 104(a), (c) (providing, in pertinent part that "any preliminary question" concerning whether "evidence is admissible" shall be determined by the Court and that any hearings on such preliminary matters shall be conducted "so that the jury cannot hear it").

Trial judges may elect one or the other of these proceedings according to their own perception of the dangers of proceeding without them and, being mindful of the teaching of *James*, that the improper admission of hearsay to the prejudice of the defendant can rarely be eliminated by curative or cautionary instructions. *See United States v. Ricks*, 639 F.2d 1305 (5th Cir. 1981) (describing trial courts' practice and examining the reasons for *James* Hearings). In *Bruton v. U.S.,* 391 U.S. 123, 88 S. Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that the defendant is deprived of his rights under the Confrontation Clause of the Sixth Amendment when his co-defendant's incriminating statement is introduced at their joint trial. This occurs even if the jury is

instructed to consider those statements only against the co-defendant. Finally, in *Cruz v. New York,* 481 U.S. 186, 107 S. Ct. 1714, 95 L.Ed.2d 162 (1987), the Court held that "where a non-testifying codefendant's confession incriminating the defendant is not directly admissible against the defendant . . . the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant." *Id.* 107 S. Ct. at 1719.

In this case, Defendant has received no assurance from the government that such statements are not part of the government's case or that the government does not intend to introduce such statements into evidence.  In fact, it is believed that such statements exist and that the government intends to use them at trial.

Because of the danger to Defendant of a statement that is not admissible and because of the inevitable waste of time, energy and efficiency when a mistrial is required in order to obviate such danger, Defendant contends that the present situation warrants a pre-trial *James* hearing. There would be little inconvenience from such a hearing. In fact, it will be much easier to flesh out the true factual basis for Defendant's alleged knowledge and agreement in one fell swoop outside of the hearing of the jury and before the trial, than to allow witness after witness to provide testimony to the jury that is inadmissible against him, burdened time and again by questioning on predicate facts and the recitation of curative and cautionary instructions to a diligent but increasingly befuddled jury.  The government will then be required to show whether there is a preponderance of evidence that Defendant was a knowing and willing participant in any conspiracy—let alone whether its evidence against him consists of statements made during and in furtherance of that alleged conspiracy. This is the very reason the Fifth Circuit devised the *James* hearing.

4. **Opposed Motion to Disclose Identity of Any and All of the Government's Confidential Informants.**

Defendant moves this Court to disclose the identity of any and all of the government's confidential informants pursuant to *Roviaro v. United States,* 353 U.S. 53 (1957). The government has a privilege to preserve the anonymity of a confidential informant in order to encourage communications by private citizens regarding criminal activities to the government. *See U.S. v. Sanchez,* 988 F.2d 1384, 1391 (5th Cir. 1993) (citing *Roviaro v. United States,* 353 U.S. 53 (1957)). However, this privilege is not absolute and must be "balanced" and cannot override the defendant's due process rights. *Id.* "If the privilege interferes with a defendant's due process right to prepare his defense or if disclosure of the information or his communication is essential to a fair determination of the defendant's guilt or innocence, the privilege must give way." *Id.*

Trial courts must follow a three-part test when determining whether the Defendant's constitutional rights are overridden by the government's privilege. The examining court must determine 1) the informant's degree of involvement in the crime; 2) the helpfulness of the disclosure to the defense; and, 3) the government's interest in non-disclosure. *Id.* Defense counsel cannot adequately determine to what extent any and all confidential informants were involved without a hearing on this matter. Further, because the confidential informant is a witness in this case, Defendant has the right to confront, cross-examine, and possibly subpoena the confidential informant. Further disclosure of any and all confidential informants is necessary to preserve Defendant's right to effective assistance of counsel. The information provided by any and all confidential informants, including any evidence which could be used to impeach any and all informants, should they testify at trial, may be discoverable under *Brady v. Maryland,* 373 U.S. 83 (1963). As such, Defendant cannot adequately prepare his defense without the disclosure of any and all confidential informants and an opportunity to question those persons.

Therefore, Defendant prays this Court order the government to disclose the identity of any and all confidential informants at least 14 days before trial to allow for follow-up discovery and investigation, or, in the alternative, set this matter for a hearing, and for any further relief at law or in equity to which Defendant may be entitled.

5. **Opposed Motion to Dismiss Based on the Government's Misuse of the Grand Jury, or in the Alternative, to Strike or Exclude Evidence.**

Defendant moves to dismiss all counts of the Indictment based on the government's misuse of the grand jury as a post-Indictment discovery tool in an effort to improperly buttress its case. In the alternative, Defendant moves to strike or exclude evidence collected by the government through testimony of witnesses who appeared before the grand jury after he was indicted on October 9, 2019.

To facilitate this motion, Defendant further requests that the Court order the government to produce to Defendant the grand jury transcripts of fact witnesses Anil Uttamchandani and Oscar Rodriguez, and any other witnesses or evidence presented to the grand jury after the Indictment. Defendant asks for leave to supplement this motion to cite relevant passages of the grand jury testimony and evidence and, after supplementation, for a hearing on the merits to establish the government's abuse of the grand jury process.

The Indictment in this case was filed on October 9, 2019. (Dkt. 11)  The grand jury's work with regard to the offenses charged was completed on the date the Indictment was handed down. By definition, an indictment is a finding of probable cause. The government, however, continued to use the grand jury in this matter to take testimony from witnesses and to collect evidence related to the pending Indictment. This is an abuse of the grand jury process.

It is well-settled that a grand jury cannot be used to continue gathering evidence relating to charged offenses after an indictment is issued. *See, e.g., United States v. Breitkreutz*, 977 F.2d 214,

217 (6th Cir. 1992) (a court may interfere with a grand jury investigation if the sole or dominant purpose is to discover facts relating to a defendant's pending indictment); *In re Grand Jury Investigation (General Motors Corp.)*, 32 F.R.D. 175, 183 (S.D. New York 1963) (observing that the government may not use a grand jury to accumulate evidence or "achieve impermissible criminal discovery" related to a pending criminal indictment). This has been the law for nearly a century. *See In re National Window Glass Workers*, 287 F. 219, 227. (N.D. Ohio 1922).

In the seminal decision of *National Window Glass*, an indictment was pending when the government issued subpoenas for witness testimony in advance of and in preparation for trial. The defendants succeeded in having the subpoenas vacated on the ground that the grand jury investigation was not instituted in good faith. Undeterred, the government issued more subpoenas for the purpose of investigating the same conspiracy before a different grand jury.  The court concluded that the "dominating, if not the only, object of the present investigation is to examine witnesses in advance of trial, find out what their testimony is to be, so as to use it in that trial, and to obtain the possession and production of documents for that purpose." *Id.*  Such is the case here.

Defendant is informed and believes that the grand jury continued its work after the Indictment was handed down, issuing subpoenas and hearing testimony of witnesses on or about October 22, 2019. The witnesses were questioned and asked to testify about the events comprising the alleged scheme to defraud as outlined in the Indictment.  There was no credible reason to subpoena grand jury testimony from these witnesses.  The only logical purpose for calling them to testify was to obtain fact testimony to support the government's claims at trial.

The record raises more than an inference that the government abused the grand jury process. Defendant respectfully prays that the Court order the government to produce the subject grand jury transcripts and that Defendant be allowed to supplement this motion accordingly. Upon

a hearing, Defendant asks this Court to dismiss the Indictment. Alternatively, Defendant asks the Court to strike any and all evidence derived from the grand jury testimony of any persons who testified on or after the Indictment was handed down by the grady jury.

6. **Motion to Dismiss for Violation of Defendant's Right to a Speedy Trial Under the Sixth Amendment and 18 U.S.C. § 316.**

Defendant files this motion to dismiss the charges against him based on the United States' failure to provide a speedy trial as required by the Sixth Amendment of the United States Constitution and the Speedy Trial Act, 18 U.S.C. § 3161, *et seq*. Defendant invokes his constitutional and statutory right to a speedy trial and moves this court for an Order dismissing this Indictment under the authority of 18 U.S.C. § 3162.

The Sixth Amendment provides that in criminal prosecutions, a defendant shall enjoy the right to a public and speedy trial. *United States v. Molina-Solorio*, 577 F.3d 300, 303 (5th Cir. 2009). The only remedy for the denial of the right to a speedy trial is dismissal of the indictment. *Id*., at 303 (citing *Barker v. Wingo*, 407 U.S. 514 (1972)). A district court's determination of a defendant's assertion that he has been denied his constitutional right to a speedy trial turns on the balancing of four factors: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant. *Id*. The *Barker* inquiry is a "difficult and sensitive balancing process and a constitutional deprivation may be found without mechanical factor counting." *Id.,* at 305.

A defendant's constitutional right to a speedy trial attaches after the defendant is charged. *United States v. Garza*, 502 F. Supp. 537, 540 n. 3 (S.D. Tex. 1980) (citing *Dillingham v. United States*, 423 U.S. 64 (1975)).  Acknowledging that Defendant's right did not attach until October 9, 2019 and only four months have passed since return of the Indictment, Defendant nevertheless

contends that the prejudice he has suffered since the prosecution was initiated far outweighs the length of the delay and any reasons the United States may cite to account for the delay.

The Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, requires that a trial commence within 70 days from the filing (and making public) of the indictment or from the date the defendant appeared before a judicial officer of the court in which the charge is pending, whichever date last occurs. *United States v. Dignam*, 716 F.3d 915, 920-21 (5th Circuit 2013); 18 U.S.C. § 3161(c)(1). A claim under the Speedy Trial Act differs in some significant ways from a claim under the Sixth Amendment Speedy Trial Clause. Under the Speedy Trial Act, Congress prescribes specific speedy trial rules which are meant to guarantee a trial at least as timely as that guaranteed by the Sixth Amendment. *Molina-Solorio*, 577 F.3d at 305 n.2; *Dignam*, 716 F.3d at 921; and *United States v. Frye*, 372 F.3d 729, 734 (5th Cir. 2004).

Section 3161(h) provides that specific periods of delay will toll the speedy trial clock. Section 3161(h)(1)(D) excludes "any delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F). In addition, any period of delay resulting from a continuance based on the court's findings "that the ends of justice served by taking such action outweigh the interest of the public and the defendant in a speedy trial," is excluded. 18 U.S.C. § 3161(h)(7)(A). Before any time resulting from an "ends of justice" continuance can be excluded, however, the court must set forth in the record "its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.*; *Dignam*, 716 F.3d at 921; *Zedner v. United States*, 547 U.S. 489, 498-99 (2006). The court's findings must be made before granting the continuance and must be on the record when the judge grants the continuance.

Any delay "reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court" shall be excluded in computing the time within which a trial shall commence. 18 U.S.C. § 3161(h)(1)(H). "Once a hearing has been held on a motion and all necessary materials submitted to the court, or once a motion not requiring a hearing is filed along with supporting materials § 3161(h)(1)(H) limits excludable time to thirty days." *United States v. Grosz*, 76 F.3d 1318, 1323 (5th Cir. 1996).

Here, the speedy trial clock began to run on October 9, 2019. From that date to February 12, 2020, the date set for the hearing on the government's motion, 126 days have passed. The delay resulting from any of co-defendant's motions arguably resulted in no more than 30 days of excludable time. Under § 3161(h)(1)(H), ninety-six non-excludable days have passed since the indictment was filed. Trial has not commenced. Under the provisions of 18 U.S.C. § 3162(a)(2), the charges lodged against Defendant in the Indictment must be dismissed with prejudice unless the government's untimely motions toll the running of the speedy trial clock. Defendant asserts that the untimely filing of the motion effectively waives the relief requested and precludes a finding that the time from the filing of the motion to hearing is excludable.

Defendant has consistently invoked his Sixth Amendment right to a speedy trial. The prejudice arising from the delay in bringing charges based on conduct that allegedly took place more than seven years exacerbates the prejudice Defendant has suffered since the indictment was filed. Application of the balancing test mandated by *Barker*, *supra*, supports a finding that the prejudice inuring to Defendant's detriment outweighs the delay and the United States' reasons for the delay. Further, the United States has wholly failed to comply with the mandates of the Speedy Trial Act. Ricardo Quintanilla is entitled to an order dismissing the indictment.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that these motions be, in all things, GRANTED.

Date:  February 10, 2020

Respectfully submitted,

**PEÑA ALECZANDER**
3900 N. 10TH ST STE 1050
McALLEN, TEXAS 78501
Telephone: (956) 948-2221
Facsimile: (888) 422-6821
Email: jpena@penaaleczander.com

By:   /s/ Jaime Peña
JAIME PEÑA
State Bar No. 90001988
SD TX: 289815

Robert Casas Steindel
3827 N. 10th Street, Suite 302
McAllen, Texas 78501
(956) 800-1137 Phone
(956) 800-1138 Fax
Rsteindel96@gmail.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF CONFERENCE

The undersigned has conferred with counsel for the United States regarding the merits of the foregoing motions and the government is opposed to the relief sought herein.

By: /s/ Jaime Peña
Jaime Peña

## CERTIFICATE OF SERVICE

This is to certify that on February 10, 2020, a true and correct copy of this motion was served on all parties of record via ECF.

By: /s/ Jaime Peña
Jaime Peña